Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL JAMES RUCHMAN, *individually and on behalf of all those similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> ALPHA PRIME SUPPS, LLC *a Florida limited liability company*, <br><br> *Defendant*. | No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Daniel James Ruchman ("Plaintiff"), individually and on behalf of a Class of California consumers similarly situated, by and through undersigned counsel, hereby brings this action against Alpha Prime Supps LLC ("Alpha Prime"), alleging that all flavors of its protein brownie bites (banana nut, glazed chocolate doughnut, cinnamon roll, chocolate cookie monster, peanut butter chocolate, cookie dough, birthday cake blondie, blueberry cobbler, and cookies 'n cream flavors, collectively, "the Product(s)"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they contain far fewer grams of protein per serving than stated upon their labels, and upon information and belief and investigation of counsel alleges as follows.

## PARTIES

1. Daniel James Ruchman is and at all times relevant was a citizen of California domiciled in Ventura, California. Ruchman attempts to eat a healthy diet in order to maintain his weight and meet fitness goals and tracks his protein intake as part of his fitness plan. Ruchman purchased (1) the cookie dough flavor of the Products from the Vitamin Shoppe website on or about May 22, 2024; (2) the blueberry cobbler flavor of the Products from the Vitamin Shoppe website on or about November 2, 2023; and (3) the blueberry cobbler flavor of the Products from the Vitamin Shoppe website on or about October 29, 2023. Ruchman believes and avers that he purchased the Products at other times during the Class period but has not retained receipts for those purchases.

2. Defendant Alpha Prime Supps LLC is a Florida limited liability company with its principal place of business and headquarters in Sunrise, Florida. On information and belief, decisions regarding the formulation and labelling of the Products are made at this Florida headquarters. On further information and belief, no member of the limited liability company is a citizen of California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states and countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interest and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

**FACTUAL ALLEGATIONS**

15. Defendant Alpha Prime Supps LLC formulates, manufactures, distributes, and sells a line of protein-infused brownies in the following flavors: banana nut, glazed chocolate doughnut, cinnamon roll, chocolate cookie monster, peanut butter chocolate, cookie dough, birthday cake blondie, blueberry cobbler, and cookies 'n cream. Each flavor of the Product states on the front label (or "principal display panel") that it contains 19 grams of protein in each brownie, as this promotional photo shows:



16. This claim is repeated in the "Nutrition Facts" panel on the back label, and on the Alphia Prime website at https://alphaprimesupps.com/pages/prime-bites.

17. All flavors of the Products are substantially similar to each other, in that they make the same deceptive protein content claim, are sold for a similar price, and are made with a similar base formulation that varies only by flavoring.

18. These label and website claims regarding the Products' protein content are false. AOAC method testing conducted at the undersigned's direction by an independent, third-party laboratory reveals that the protein content in the Products is overstated, with the shortfalls ranging from approximately 10% at the high end (or 17 grams of protein in a bar claiming to contain 19 grams) to 23% at the low end (or 14.7 grams of protein in a bar claiming to contain 19 grams of protein), as shown below:

| PRODUCT | STATED PROTEIN (grams) | ACTUAL PROTEIN (grams) | % SHORTFALL |
|---|---|---|---|
| Chocolate Glazed Donut | 19 | 15.8 | 16.84 |
| Peanut Butter Chocolate | 19 | 16.5 | 13.16 |
| Birthday Cake | 19 | 16.8 | 11.58 |
| Glazed Cinnamon Roll | 19 | 15.8 | 16.84 |
| Chocolate Cookie Monster | 19 | 14.7 | 22.63 |
| Cookie Dough | 19 | 15.8 | 16.84 |
| Cookies 'n Cream Blondie | 19 | 15.9 | 16.32 |
| Blueberry Cobbler | 19 | 17.1 | 10.00 |

19. The average shortfall of all tested flavors of the Products is 15.5 percent.

20. Because the Products are "Class I" foods as defined in 21 C.F.R. § 101.9(g)(3), no shortfall in protein content is permitted under federal labelling regulations. Instead, pursuant to that provision, "the nutrient content … must be formulated to be at least equal to the value for that nutrient declared on the label."

21. Purchasers of these protein brownies including Plaintiff and other Class members rely on the stated protein content of the Products in order to count their "macros," or to eat a specific amount of protein daily.

22. Plaintiff reviewed the labels on the Product prior to his purchases, and reviewed the protein content claim made on those labels. Class members, including Plaintiff, who viewed the Products' labels reasonably understood the protein content claim made on the labels to mean that the Products contained 19 grams of protein in each brownie.

23. Plaintiff had no way of knowing based simply on the Products' appearance that they do not contain the amount of protein claimed and warranted by the label. Furthermore, consumers such as Plaintiff are under no obligation to investigate the protein content values stated on the Products' labels before making their purchase and are entitled to rely on those statements.

24. Because of its deceptive and false labelling statements, Defendant was enabled to charge consumers including Plaintiff a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace for competing products. These protein brownies sell for a significant premium over competing protein-infused products in the marketplace.

25. Consumers, including Plaintiff, reasonably relied on Defendant's label claims described herein such that he would not have purchased the Products from Defendant if the truth about the protein content of the Products was known, or would have only been willing to pay a substantially reduced price for the Products had he known that Defendant's representations regarding the Products' protein content were false and misleading.

26. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

28. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

29. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

30. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

31. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of California.

32. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

    a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

    b. Whether a reasonable consumer would understand Defendant's protein claims to indicate that the Products contained 19 grams of protein, and reasonably relied upon those representations;

    c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

    d. the proper amount of damages and disgorgement or restitution;

    e. the proper scope of injunctive relief; and

    f. the proper amount of attorneys' fees.

33. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

34. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

35. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

36. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

37. There are no defenses available to Defendant that are unique to the named Plaintiff.

38. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members'

interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

39.     Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

40.     **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

   b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

   c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

   d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

41.     Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

42. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Defendant would like to purchase the Products and other products sold by Defendant in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the deceptions regarding protein quality found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

43. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the protein content in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

44. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

45. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750** *et seq.*

46. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

47. Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

48. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

49. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

50. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the protein claims that were made by Defendant on the principal display panel of its Products.

51. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

   e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

52. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

53. Concurrent with the filing of this Complaint, Plaintiff will give notice pursuant to Cal. Civ. Code § 1782 and will, absent corrective action, amend his Complaint to seek actual damages.

54. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

55. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law.

56. Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.* (9th Cir. 2015) 783 F.3d 753, 762 (quoting 55 *Cal. Jur*. 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225. Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

57. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by misrepresenting that the Products provided 19 of protein per serving.

58. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

59. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

60. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

61. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

62. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

63. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS WARRANTY

64. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

65. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, expressly warranted that the Products contained 19 grams of protein.

66. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

67. The Products do not conform to the express warranty that the Products contained 19 grams of protein per serving, as set forth herein.

68. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' protein content; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

　　a. Certifying the Class;

b. Declaring that Defendant violated the CLRA and/or was unjustly enriched and/or breached an express warranty;

c. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

e. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

June 10, 2025